**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NOUREDDINE BHIRI | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SEIFEDDINE BOUZAYENE | ) | |
| | ) | |
| Plaintiffs, | ) | **COMPLAINT FOR EXTRAJUDICIAL** |
| | ) | **KILLING AND TORTURE** |
| v. | ) | |
| | ) | |
| TAOUFIK CHARFEDDINE | ) | |
| | ) | JURY TRIAL DEMANDED |
| And | ) | |
| | ) | |
| KHALED YAHYAOUI | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiffs Noureddine Bhiri ("Plaintiff Bhiri") and Seifeddine Bouzayene ("Plaintiff Bouzayene") (collectively "Plaintiffs"), by and through their undersigned attorney, allege as follows:

## I. NATURE OF THE CASE

1.      This is an action to recover compensatory and punitive damages for the extrajudicial killing and torture of two Tunisians by Defendant Taoufik Charfeddine ("Charfeddine"), and Defendant Khaled Yahyaoui ("Yahyaoui") whose actions are in violation of domestic and international law. In October 2021, Charfeddine was sworn in as the Minister of the Interior of the Republic of Tunisia ("Tunisia"). In October 2019, Yahyaoui was appointed by the President of Tunisia as Director General of the Presidential Security unit and worked closely

with the Ministry of Interior and Charfeddine.

2.      As head of the Tunisian Ministry of the Interior ("MOI"), Charfeddine has exercised complete command authority over the Tunisian Internal Security Forces, members of the National Guard, and law enforcement personnel.[1] Charfeddine is responsible for or complicit in human rights abuses, violations of universally-recognized rights, and activities leading to such harms committed by security forces and civil protection personnel under his command, believed to have occurred from October 11, 2021, to the current date. Under Charfeddine's leadership, the MOI has engaged in a sustained pattern and regular practice of human rights abuses, including, but not limited to, the disproportionate use of force by police and security forces; the prosecution of members of the press, human rights defenders, and critics on vague national security grounds; the silencing of media outlets; obstruction of the judicial process; blanket use of travel bans; arbitrary arrests and detention, including "assigned residences"; abduction-style detention; and invasion of privacy.

3.      On December 31, 2021, security forces under the command of Defendant Charfeddine and Defendant Yahyaoui detained Plaintiff Bhiri, a senior official of the political party Ennahdha, in an "abduction-style detention" with no explanation given, no warrant for his arrest provided, and without disclosing any formal charge against him during his detention, bypassing the usual legal procedure.[2] Plaintiff Bhiri had no access to his lawyers and was denied

---

[1] "Organisation du ministère," Republique Tunisienne | Ministere de l'Interieur, at *https://www.interieur.gov.tn/article/organisation-du-ministere* (accessed November 30, 2022). *See also* Sarah Yerkes and Marwan Muasher, "Decentralization in Tunisia: Empowering Towns, Engaging People," Carnegie Endowment for International Peace, May 17, 2018, at *https://carnegieendowment.org/2018/05/17/decentralization-in-tunisia-empowering-towns-engaging-people-pub-76376* (accessed November 30, 2022).

[2] "Tunisia's Ennahdha party says senior official detained," Al Jazeera, December 31, 2021, at *https://www.aljazeera.com/news/2021/12/31/tunisias-ennahdha-party-says-senior-official-detained* (accessed December 4, 2022);"Tunisia: Free Arbitrarily Detained Ex-Justice Minister," Human Rights Watch, January 6, 2022, at *https://www.hrw.org/news/2022/01/06/tunisia-free-arbitrarily-detained-ex-justice-minister* (accessed December 1, 2022); "Tunisia: UN rights office calls for release of former justice minister," UN, January 11, 2022, at

the opportunity to challenge his detention before a judicial authority.[3] The detention and location of Plaintiff Bhiri was not acknowledged or known until January 2, 2022, when Plaintiff Bhiri was transferred to a hospital after his health had significantly deteriorated.[4] Plaintiff Bhiri was detained for sixty-seven days without any charges and suffered grave physical and emotional damage. The security forces and personnel responsible for abducting and detaining Plaintiff Bhiri were under the command responsibility of Defendants Charfeddine and Yahyaoui.

4.     On January 14, 2022, hundreds of Tunisians participated in a demonstration commemorating the 11th anniversary of the Tunisian revolution while also protesting against a government ban on all public gatherings. Security forces, under the jurisdiction of Defendant Charfeddine, used excessive violence to suppress protesters, including dispersing the demonstrators with tear gas, sticks, and water cannons, leading to the death of a 57-year-old male named Ridha Bouziane ("Decedent Bouziane"), the deceased father of Plaintiff Bouzayene.[5] The security forces responsible for causing harm to Decedent Bouziane were under the command

*https://news.un.org/en/story/2022/01/1109512* (accessed December 1, 2022); "2021 Country Reports on Human Rights Practices: Tunisia," U.S. Department of State, April 12, 2022, at *https://www.state.gov/reports/2021-country-reports-on-human-rights-practices/tunisia/* (accessed November 28, 2022).

[3] "Press briefing notes on Tunisia," OHCHR, January 11, 2022, at https://www.ohchr.org/en/2022/01/press-briefing-notes-tunisia (accessed December 1, 2022); "Tunisia: Ex-Minister and Official Arbitrarily Detained," Amnesty International, January 14, 2022, at https://www.amnesty.org.uk/urgent-actions/ex-minister-and-official-arbitrarily-detained (accessed December 1, 2022); "Universal Periodic Review Submission on Tunisia," Human Rights Watch, March 30, 2022, at https://www.hrw.org/news/2022/03/30/universal-periodic-review-submission-tunisia (accessed November 28, 2022).

[4] "Tunisia: Free Arbitrarily Detained Ex-Justice Minister," Human Rights Watch, January 6, 2022, at *https://www.hrw.org/news/2022/01/06/tunisia-free-arbitrarily-detained-ex-justice-minister* (accessed December 1, 2022); "Tunisia: Authorities must end crackdown on political opposition and release detainees," ICJ, January 7, 2022, at *https://www.icj.org/tunisia-authorities-must-end-crackdown-on-political-opposition-and-release-detainees/*.

[5] "Tunisia police use water cannon to disperse protesters," Al Jazeera, January 14, 2022, at *https://www.aljazeera.com/news/2022/1/14/tunisia-police-use-water-cannon-on-hundreds-of-protesters* (accessed November 28, 2022); "Tunisian man died from police violence at protest: Opposition," Al Jazeera, January 19, 2022, at *https://www.aljazeera.com/news/2022/1/19/tunisian-man-died-from-police-violence-at-protest-opposition* (accessed November 28, 2022); "Tunisia dies after protesting President Saied's moves," Al Jazeera, January 20, 2022, at *https://www.aljazeera.com/news/2022/1/20/tunisia-marks-first-death-from-protests-against-president-saied*; Francesca Ebel, "Tunisian party blames death of member on police violence," AP News, January 20, 2022 at *https://apnews.com/article/coronavirus-pandemic-health-tunisia-africa-violence-4a1ccdfc8b1fab68fd729ce9e147c5a6*.

responsibility of Defendant Charfeddine.

5.     Defendants Charfeddine and Yahyaoui are personally liable for, or exercised

command responsibility over, or conspired with, or aided and abetted, internal security forces,

members of the National Guard, Presidential Security, and law enforcement personnel that are

directly involved in disproportionate and lethal use of force against civilians, recurrent police and

legal harassment of the media, civil society, and critics of the government, imposing arbitrary

travel bans, obstruction of justice, unlawful attacks upon the honor and reputation of Tunisians,

arbitrary house arrests, and abduction-style detentions. Defendants Charfeddine and Yahyaoui

are liable under domestic and international law for the injuries, pain, suffering, and death

suffered by the victims of this unlawful extrajudicial killing and the loss suffered by their family

members. One of these victims and the living relative of another victim bring suit today.

## II. JURISDICTION

6.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331 and 1350. This case arises under Acts of Congress and the Treaties of the United States.

7.     Personal jurisdiction over Defendants will be proper under Fed. R. Civ. P. 4(k)(2)

following completion of service of process.

## III. VENUE

8.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(3) and 28

U.S.C. § 1391(c)(3). Defendants Charfeddine and Yahyaoui currently reside in Tunisia, and the

events and omissions that are the subject of this action arose in Tunisia.

## IV. PARTIES

*Plaintiffs*

9.     Plaintiff Bhiri is a 63-year-old Tunisian citizen who formerly served as the

Minister of Justice of Tunisia from 2011 to 2013, and is currently a member of the Tunisian bar. Plaintiff Bhiri had been driving en route to his office on December 31, 2021, when persons under the jurisdiction of the MOI abducted and then illegally detained Plaintiff Bhiri, who suffers from several chronic illnesses, in deplorable conditions in an unofficial holding center, causing rapid deterioration of his health and severe emotional distress.

10.     Plaintiff Bouzayene is a 22-year-old Tunisian citizen, and the son of Decedent Bouziane. Decedent Bouziane, 57 years old at the time of his death, had been participating in a demonstration in Tunis on January 14, 2022, before being killed after security forces, under Charfeddine's authority, violently dispersed protestors, severely injuring Decedent Bouziane, resulting in his death days later.

*Defendants*

11.     Defendant Charfeddine is an individual person who is a citizen of Tunisia.

12.     Defendant Yahyaoui is an individual person who is a citizen of Tunisia.

13.     Defendants Charfeddine and Yahyaoui do not have head of state immunity or foreign official immunity, nor do they have any other statutory or common law immunity or privilege.

## V. FACTUAL ALLEGATIONS

*Torture of Plaintiff Bhiri*

14.     On December 31, 2021, at around 7:30 am Tunis time, Plaintiff Bhiri, a lawyer practicing within the Tunisian courts of appeal, and Plaintiff Bhiri's wife, Mrs. Saida Akremi, also a lawyer practicing within the Tunisian courts of appeal, had driven approximately 150 meters from their home in Manar in the Governorate of Tunis en route to Plaintiff Bhiri's office when their vehicle was abruptly intercepted on Shahida Bin Triaa Street in Manar by two luxury

SUVs and one Kia sedan, some of which carried the license plate designation "RS", signifying "Regime Suspensif", which are designations for government vehicles in Tunisia. The Kia sedan stopped in front of Plaintiff Bhiri's vehicle to block Plaintiff Bhiri's forward progress while the two other vehicles surrounded Plaintiff Bhiri's vehicle. Several plainclothes, bearded men exited the Kia and SUVs, opened the driver and passenger side doors, forcefully grabbing and pulling Plaintiff Bhiri from the car, causing Plaintiff Bhiri to fall to the ground, before pulling Plaintiff Bhiri to his feet and forcing him to get inside one of the SUVs. Initially, the unarmed men – believed to be members of the Tunisian Presidential guard – confiscated the car keys to Plaintiff Bhiri's vehicle and the mobile phones of both Plaintiff Bhiri and Mrs. Akremi. The men then allowed Plaintiff Bhiri's wife to leave. Two men restrained Plaintiff Bhiri in the back of one of the heavily-tinted SUVs. The caravan of vehicles drove at dangerously high speeds to Bizerte Governorate, Tunisia (over 50 miles away).

15.    The captors drove Plaintiff Bhiri to an undisclosed house adjacent to the National Guard Station in Menzel Jemil (a further 20 miles away), where he remained for approximately three hours. The SUV holding Plaintiff Bhiri drove into the garage of said undisclosed house, where Plaintiff Bhiri was forced to sit for approximately two hours, while the two other vehicles parked outside. Plaintiff Bhiri was then escorted inside of the National Guard Station (the "Station") during which time Plaintiff Bhiri was introduced to the Director of security forces of Bizerte, Mohamed Nizar Thlijani ("Director Thlijani"), and Police Chief of Menzel Jemil, Bilel Sahbani ("Police Chief Sahbani"). Plaintiff Bhiri inquired with Director Thlijani and Police Chief Sahbani about the identity of his captors (the men who had abducted Plaintiff Bhiri and then brought him to the Station). After Director Thlijani was unable to provide the names of the captors or acknowledge the role of these men in bringing Plaintiff Bhiri to the Station, Plaintiff

Bhiri requested to file a complaint against the men; Director Thlijani refused this request.

16.     From the Station in Menzel Jemil, Plaintiff Bhiri was then taken to an abandoned building (the "Detention Building") in Forest Du Rimel, Bizerte, located several miles away. During this time, Plaintiff Bhiri did not know why he was being detained and was not charged with any crime.

17.     Upon arrival at the Detention Building on December 31, 2021, Plaintiff Bhiri was taken to a very small cell measuring about six feet by ten feet. The cell's conditions were completely unsanitary and uninhabitable, as the cell was cold and had a brick bed with no mattress, while basic hygienic products, such as soap and a toothbrush, were not provided to Plaintiff Bhiri. Plaintiff Bhiri suffers from various chronic illnesses, including hypertension and diabetes, and was not permitted to obtain medication for his various illnesses. Plaintiff Bhiri was not allowed to communicate with his family or even a lawyer from the first moment of his unlawful detention.

18.     To protest the deplorable conditions of the Detention Center, Plaintiff Bhiri began a hunger strike on December 31, 2021, which lasted until January 2, 2022, when his health deteriorated. On or about January 2, 2022, Plaintiff Bhiri was forcibly taken from his cell by men armed with semi-automatic weapons, who then bound his hands and feet to a plastic stretcher as they carried him to a hearse, a vehicle typically used to transport dead bodies. Plaintiff Bhiri was then forcibly restrained and unable to move any part of his body for roughly four hours while the captors awaited orders of where to take Plaintiff Bhiri. The captors then received orders to take Plaintiff Bhiri to Habib Bougatfa University Hospital in Bizerte (the "Hospital"), where they proceeded to transport Plaintiff Bhiri.

19.     Upon arrival in the hearse at the Hospital on or about the evening of January 2,

2022, Plaintiff Bhiri was placed on a wheeled hospital stretcher and admitted to the Hospital

through its backdoors. Plaintiff Bhiri was wheeled into a room in the Cardiology Department of

the Hospital, with a large presence of armed government security personnel, both inside and

outside Plaintiff Bhiri's room.

20.     Plaintiff Bhiri continued to refuse to eat or drink until he was permitted to see his

family and a lawyer. His captors refused his request for three days during which time Plaintiff

Bhiri was not allowed to communicate with his family or a lawyer, nor was he given access to

necessary medication. At this time, Plaintiff Bhiri's family and friends were made aware of

Plaintiff Bhiri's location and made every effort to visit Plaintiff Bhiri, but were prevented by the

armed government security personnel.

21.     On or about January 3, 2022, a day after Plaintiff Bhiri was admitted to the

Hospital, representatives from the High Committee for Human Rights and the National Authority

for the Prevention of Torture ("INPT") attempted to visit Plaintiff Bhiri in his Hospital room, but

were initially prevented by the armed government security personnel. After carrying out their

examinations of Plaintiff Bhiri, three medics of INPT expressed that they had "grave fears"

relating to the deterioration in Plaintiff Bhiri's health.[6]

22.     Shortly thereafter, the doctors at the Hospital were alarmed at the deterioration of

Plaintiff Bhiri's health; particularly his severe kidney failure, his dangerously high blood sugar

and blood pressure readings, and his low blood oxygen levels. Consequently, the doctors ordered

Plaintiff Bhiri's transfer to Room 3 in the Intensive Care Unit. While there, the armed

government security personnel insisted on keeping the doors to Room 3 open at all times and

prevented doctors from examining Plaintiff Bhiri alone, contrary to healthcare practice. This

---

[6] "Tunisia doctors have 'grave fears' for hunger-striking politician," Al Jazeera, January 6, 2022, at
*https://www.aljazeera.com/news/2022/1/6/tunisia-doctors-have-grave-fears-for-hunger-striking-politician.*

forced the Hospital doctors to move Plaintiff Bhiri, yet again, to an all-glass room which afforded no privacy. Plaintiff Bhiri's room was guarded by armed government security personnel around the clock, even though the room was equipped with a camera. During Plaintiff Bhiri's time in this room, the armed government security personnel prevented the Hospital doctors and nurses from using a sheet when examining Plaintiff Bhiri's body or when he needed to relieve himself, causing further emotional distress to Plaintiff's Bhiri's dire situation. On or about January 5, 2022, and in these circumstances, Plaintiff Bhiri's family were finally allowed to visit. However, Plaintiff Bhiri was still effectively unlawfully detained and not afforded with any freedom.

23.     On or about March 2, 2022, and after seeing no end to his unlawful detention and violation of rights, Plaintiff Bhiri decided to go on a hunger strike and remove all medical devices and monitors, including the intravenous, from his person. This led to a further and rapid deterioration in Plaintiff Bhiri's health. At about 8:00 pm on March 7, 2022, Plaintiff Bhiri was informed that his unlawful detention had ended and he was free to leave.

24.     The unlawful detention of Plaintiff Bhiri for sixty-seven days and the deliberate mistreatment of him directly caused the deterioration of his health, including partial paralysis in his right and left hands, shoulder tendonitis, fungus under his toenails, and infections in numerous parts of his body; all of which require long term treatment. Despite Plaintiff Bhiri's numerous attempts to seek legal remedies, as detailed below, the Tunisian government blocked all such grievances. These acts have caused pain and suffering to Plaintiff Bhiri.

25.     The UN and several internationally recognized human rights organizations criticized the abduction and unlawful holding of Bhiri in secret detention.[7]

---

[7] "Tunisia: Ex-Minister and Official Arbitrarily Detained," Amnesty International, January 14, 2022, at https://www.amnesty.org.uk/urgent-actions/ex-minister-and-official-arbitrarily-detained (accessed December 1,

26.     Human Rights Watch reported that the Tunisian authorities have been using assigned residences to conceal secret detentions under the guise of a state of emergency.[8]

27.     The UN Human Rights Twitter account specifically identified Tunisian "internal security forces" as being the responsible party in the "apparent abduction" of Plaintiff Bhiri.[9]

*28.*     Spokesperson for the UN High Commissioner for Human Rights, Liz Throssell, called on authorities "to either promptly release or properly charge" Plaintiff Bhiri, saying "these two incidents… raise serious questions regarding abduction, enforced disappearance and arbitrary detention."[10]

29.     Eric Goldstein, Middle East and North Africa director at Human Rights Watch classified the detention as an abduction stating, "The abduction-style detention of Noureddine Bhiri … demonstrates the growing threat to human rights protections since President Saied's power grab last July…The authorities should free Bhiri [ ] now or, if they have evidence of an actual crime, charge them under the law. It's that simple."[11]

30.     The World Organisation Against Torture (Organisation Mondiale Contre la Torture, "OMCT") said Plaintiff Bhiri's detention was "not only arbitrary but also illegal", decrying that he was "arrested without a warrant" and that his location was "kept secret" until his admission to hospital.[12]

---

2022); "Tunisia: Urgently reverse alarming backsliding on human rights," Amnesty International, July 21, 2022, at https://www.amnesty.org/en/latest/news/2022/07/tunisia-urgently-reverse-alarming-backsliding-on-human-rights/.

[8] "Tunisia: Secret Detentions Under Cover of State of Emergency," Human Rights Watch, February 9, 2022, at https://www.hrw.org/news/2022/02/09/tunisia-secret-detentions-under-cover-state-emergency.

[9] See Twitter post, Official Twitter account of UN Human Rights (@UNHumanRights), January 11, 2022, at https://twitter.com/UNHumanRights/status/1480888533669883910?s=20&t=Bp_EXOIyj9s95q8sLnTTRA.

[10] "Press briefing notes on Tunisia," OHCHR, January 11, 2022, at https://www.ohchr.org/en/2022/01/press-briefing-notes-tunisia (accessed December 1, 2022).

[11] "Tunisia: Free Arbitrarily Detained Ex-Justice Minister," Human Rights Watch, January 6, 2022, at https://www.hrw.org/news/2022/01/06/tunisia-free-arbitrarily-detained-ex-justice-minister.

[12] "Tunisia doctors have 'grave fears' for hunger-striking politician," Al Jazeera, January 6, 2022, at *https://www.aljazeera.com/news/2022/1/6/tunisia-doctors-have-grave-fears-for-hunger-striking-politician*.

31.     The Ennahdha party described the minister's behavior as "returning the country to political tyranny," condemned the "kidnap and enforced disappearance" of Bhiri, and asserted that such acts "violated all international laws and treaties."[13]

32.     Tunisian authorities, specifically Charfeddine, were slow to make known or acknowledge the identity of Plaintiff Bhiri and were reluctant to disclose the specific basis for, or location of, Plaintiff Bhiri's detention.[14] At a January 3, 2022 press conference, Charfeddine vaguely referenced the detention of Bhiri, but "did not explain why protecting national security required placing persons in preventive confinement, without charge, bypassing the normal judicial process, for acts allegedly committed nine years ago."[15] The MOI later cited President Saied's same-day appointment of a Provisional Supreme Judicial Council as the basis for the decision to terminate Bhiri's detention.[16]

*Death of Decedent Bouziane*

33.     On January 14, 2022, hundreds of demonstrators marched in the capital of Tunis in commemoration of the 11th anniversary of the Tunisian revolution, while also protesting against a government ban on all public gatherings and calling for the restoration of democracy

---

[13] *Id.*

[14] "Tunisia: Calls mount for release of detained Ennahdha official," Al Jazeera, January 2, 2022, at *https://www.aljazeera.com/news/2022/1/2/tunisia-calls-mount-for-release-of-detained-ennahdha-official* (accessed December 4, 2022); "Tunisia: Authorities must end crackdown on political opposition and release detainees," ICJ, January 7, 2022, at *https://www.icj.org/tunisia-authorities-must-end-crackdown-on-political-opposition-and-release-detainees/*.

[15] YouTube Video, Video posted to YouTube account of Tunisian state television, January 3, 2022, at *https://www.youtube.com/watch?v=u_17_3tG82g.*

[16] "Tunisian politician Noureddine Bhiri released from house arrest," The National, March 7, 2022, at https://www.thenationalnews.com/mena/2022/03/08/tunisian-politician-noureddine-bhiri-released-from-house-arrest/; "Saïed issues decree appointing members of Provisional Supreme Judicial Council," TAP, March 7, 2022, at https://www.tap.info.tn/en/Portal-Top-News-EN/14962015-sa%C3%AFed-issues-decree (accessed December 4, 2022); "Senior official from Tunisia's Ennahda party released from house arrest," Reuters, March 8, 2022, at https://www.reuters.com/world/africa/tunisian-interior-ministry-lifts-house-arrest-order-against-ennahda-partys-2022-03-07/ (accessed December 4, 2022); "Interior Ministry terminates two house-arrest decisions," TAP, March 8, 2022, at https://www.tap.info.tn/en/Portal-Politics/14964591-interior-ministry (accessed December 4, 2022).

following Tunisian President Kais Saied's ("President Saied") power grab of July 25, 2021, the

date on which President Saied took full *de facto* control of all three branches of the Tunisian

government in a presidential coup[17], reinforced by subsequent rounds of unconstitutional

presidential decrees. The demonstrators were met with a violent crackdown by security forces,

including "teargas, water cannons, sound bombs, batons and a heavy police presence in the

vicinity of Avenue Habib Bourguiba, which effectively blocked them from reaching the area that

has been the focal point of demonstrations since the 2011 revolution."[18] One of these

demonstrators, Decedent Bouziane, was seriously injured while taking part in the demonstration;

Decedent Bouziane died five days later from his injuries as a result of serious brain damage.[19]

34.     Samir Dilou, the former leader of the political party Ennahdha, qualified

Decedent Bouziane's death as a "murder", stating that "[t]he deceased left his home on January

14 to participate in the commemoration of the revolution. He said goodbye to his two daughters

and son. They waited for him for five days, but he never returned. Today, they bid him farewell

before he's put to rest."[20]

35.     According to Ennahdha, Decedent Bouziane died "after succumbing to a brain

---

[17] The actions of July 25 are nearly universally referred to in Tunisia as a coup, including by most Kais Saied supporters. Political scientists and analysts often refer to this kind of coup by an elected leader as a constitutional coup (despite its unconstitutionality) or a self-coup (*autogolpe* in Spanish, occurring with some frequency in Latin America). Both terms, however, are somewhat confusing. The U.S. government has not made a formal determination on Tunisia's July 25, 2021 coup, but has reduced and held some of the foreign assistance to Tunisia and did not issue statements of support for the coup or for the unconstitutional July 2022 referendum.

[18] Ghufrane Mounir, "Tunisia: Protester dies from wounds in 'excessively violent' crackdown," Middle East Eye, January 19, 2022, at *https://www.middleeasteye.net/news/tunisia-protester-dies-wounds-revolution-anniversary*.

[19] Marwa al-Saheli, "Tunisia's Ennahda party calls for judicial probe into protester's death," Anadolu Agency, January 20, 2022, at *https://www.aa.com.tr/en/middle-east/tunisias-ennahda-party-calls-for-judicial-probe-into-protesters-death/2480962.*

[20] "Tunisian dies after protesting President Saied's moves," Al Jazeera, January 20, 2022, at *https://www.aljazeera.com/news/2022/1/20/tunisia-marks-first-death-from-protests-against-president-saied* (accessed December 13, 2022).

hemorrhage that they say was caused by violence meted out by police officers".[21]

36.     The popular Citizens Against the Coup coalition said Decedent Bouziane "died in a hospital in the capital after suffering serious injuries as a result of the excessive violence by police in the demonstration."[22]

*Defendant Charfeddine's Leadership of the MOI*

37.     The MOI is a government ministry office of Tunisia, responsible for overseeing internal affairs and civilian security forces, including the police.

38.     Charfeddine has served as a senior government official within the MOI on and off for several years, having served in the Cabinet of former Prime Minister Mechichi from August 2020 to January 2021, and again since October 11, 2021.

39.      The actions of Tunisia's Internal Security Forces "have long been a matter of concern," according to the UN Office of the High Commissioner of Human Rights ("UN OHCHR"), the office which has "repeatedly raised the issue in discussions with the authorities over the past decade."[23]

40.     During a March 27 to April 2, 2022 visit to Tunisia, the four-member delegation from the UN Subcommittee on Prevention of Torture ("UN SPT") noted persisting police

---

[21] Francesca Ebel, "Tunisian party blames death of member on police violence," AP News, January 20, 2022 at *https://apnews.com/article/coronavirus-pandemic-health-tunisia-africa-violence-4a1ccdfc8b1fab68fd729ce9e147c5a6.*

[22] "Tunisian police killed man in first death of protests, activists say," Al Arabiya, January 19, 2022, at *https://english.alarabiya.net/News/north-africa/2022/01/19/Tunisian-police-killed-man-in-first-death-of-protests-activists-say-. Also see* post by Nessma TV, January 29, 2022, at *https://www.nessma.tv/ar/%D8%A3%D8%AE%D8%A8%D8%A7%D8%B1-%D9%88%D8%B7%D9%86%D9%8A%D8%A9/actu/%D9%88%D9%82%D9%81%D8%A9-%D8%A7%D8%AD%D8%AA%D8%AC%D8%A7%D8%AC%D9%8A%D8%A9-%D9%84%D9%85%D9%88%D8%A7%D8%B7%D9%86%D9%86%D9%86-%D8%B6%D8%AF-%D8%A7%D9%84%D8%A5%D9%86%D9%82%D9%84%D8%A7%D8%A8-%D8%A3%D9%85%D8%A7%D9%85-%D9%85%D9%86%D8%B2%D9%84-%D8%B1%D8%B6%D8%A7-%D8%A8%D9%88%D8%B2%D9%8A%D8%A7%D9%86%D9%86/375445.*

[23] "Tunisia: UN rights office calls for release of former justice minister," UN, January 11, 2022, at *https://news.un.org/en/story/2022/01/1109512* (accessed December 1, 2022).

violence due to "the impunity of its perpetrators," a claim substantiated by Human Rights Watch.[24]

41.     Tunisian security forces have demonstrated a pattern of violently dispersing peaceful demonstrations, including by beating demonstrators with clubs and using water cannons, which led to the death of a civilian in January 2022.[25]

42.     The UN Human Rights Committee has identified a clear pattern of intimidation, harassment, arrests, detentions, and prosecutions of journalists, government critics, political opponents of the president, and human rights defenders by Tunisian government authorities for exercising their right to freedom of expression, with no justification other than on the basis of their perceived political or other affiliations, or allegations of ambiguous and loosely defined offenses.[26]

*Defendant Charfeddine's Command Responsibility*

43.     As head of the MOI, Defendant Charfeddine has a duty under both domestic law and international law to ensure the protection of civilians, to prevent violations of international law by the MOI, and to ensure all persons under his command are trained in, comply with, and are punished under the laws of warfare. This law includes the prohibition of torture and extrajudicial killing.

---

[24] "Tunisia: Abusive Treatment During Protests," Human Rights Watch, January 31, 2018, at *https://www.hrw.org/news/2018/01/31/tunisia-abusive-treatment-during-protests*; "Tunisia: Police Use Violent Tactics to Quash Protests," Human Rights Watch, February 5, 2021, at *https://www.hrw.org/news/2021/02/05/tunisia-police-use-violent-tactics-quash-protests* (accessed November 28, 2022); "Tunisia: Progress made but concerns remain, says UN torture prevention body," UN Human Rights Office of the High Commissioner (OHCHR), April 6, 2022, at *https://www.ohchr.org/en/press-releases/2022/04/tunisia-progress-made-concerns-remain-says-un-torture-prevention-body* (accessed November 28, 2022).
[25] "Tunisian dies after protesting President Saied's moves," Al Jazeera, January 20, 2022, at *https://www.aljazeera.com/news/2022/1/20/tunisia-marks-first-death-from-protests-against-president-saied*; "Tunisia: A year of human rights regression since president's power-grab," Amnesty International, July 21, 2022, at *https://www.amnesty.org/en/documents/mde30/5876/2022/en/*.
[26] "A/HRC/WG.6/41/TUN/2 - Tunisia: Compilation of information prepared by the Office of the United Nations High Commissioner for Human Rights," UN Human Rights Council, August 22, 2022.

44.     Defendant Charfeddine has failed or refused to take all necessary measures to investigate and prevent such abuses, and he has failed to punish personnel under his command for committing such abuses. The acts of torture and extrajudicial killing inflicted upon the Plaintiffs and Decedent Bouziane were part of a pattern and practice of systematic or widespread human rights violations against the civilian population. At all relevant times, Defendant Charfeddine intentionally directed, knew, or reasonably should have known that his targets were not legitimate military targets and that his forces engaged in a pattern and practice of gross human rights abuses. Charfeddine is directly responsible for the aforementioned human rights violations through his legal "command responsibility," given the widespread nature and longstanding pattern of abuse, and having either directed the abuse, could not possibly have not known about it, and declined to stop it, and/or declined to investigate the abuse after it occurred.[27]

*Absence of Legal Remedies in Tunisia*

45.     Plaintiff Bhiri and or his wife or lawyer filed numerous complaints with the Court of First Instance in Tunis, including on December 31, 2021, January 4, 2022, January 7, 2022, and June 30, 2022. However, under Defendant's pressure, all such complaints were not examined by the Tunisian court.

46.     Plaintiffs do not have the ability to seek a legal remedy or appropriate civil relief in Tunisia.

47.     Tunisian domestic courts, affected by recent political changes, do not afford adequate due process. On February 5, 2022, President Saied announced his intent to dissolve the

---

[27] This standard is based primarily on the "Command Responsibility" standard of International Humanitarian Law. *See* International Committee of the Red Cross, "Rule 153. Command Responsibility for Failure to Prevent, Repress or Report War Crimes," Customary International Humanitarian Law, *https://ihl-databases.icrc.org/customary-ihl/eng/docs/v1_rul.*

High Judicial Council (Conseil Supérieur de la Magistrature, "CSM"), the judicial body that deals with judicial independence, and to replace it with a temporary council whose membership was decided by the president and issued by a decree-law.[28] On February 15, 2022, in an action which the International Commission of Jurists ("ICJ") called "an affront to the rule of law and judicial independence in Tunisia," President Saied adopted a presidential decree empowering himself to unilaterally fire judges at will based on vague, undefined criteria, without due legal process or the possibility to appeal the decision before a court.[29] Soonthereafter, President Saied announced the dismissal of 57 judges and prosecutors based on unsubstantiated allegations.[30],[31]

---

[28] Facebook post, Official Facebook page of the Tunisian President's Office, February 5, 2022, at *https://www.facebook.com/Presidence.tn/videos/330334598837172/*; "Tunisie: 'la Dissolution du Conseil Superieur de la Magistrature est illegale'," Anadolu Agency, February 6, 2022, at *https://www.aa.com.tr/fr/afrique/tunisie-la-dissolution-du-conseil-sup%C3%A9rieur-de-la-magistrature-est-ill%C3%A9gale- youssef-bouzacker-/2495411*;"Tunisia: President's moves to shut down High Judicial Council pose grave threat to human rights," Amnesty International, February 8, 2022, at *https://www.amnesty.org/en/latest/news/2022/02/tunisia-presidents-moves-to-shut-down-high-judicial-council-poses-grave-threat-to-human-rights/*; Facebook post, official Facebook page of the Tunisian President's Office, February 12, 2022, at
*https://www.facebook.com/Presidence.tn/posts/312042767620997*.
*See also* Decree 2022-11, at: *https://legislation-securite.tn/ar/law/105201*; Decree 2022-11, art. 28, at *https://legislation-securite.tn/ar/law/105201*.

[29] On February 15, 2022, President Saied adopted Decree 2022-11 which allowed him to dismiss judges on vague grounds.  Decree 2022-35, adopted June 1, 2022, gives the president the authority to immediately fire judges and prosecutors at will if they are a threat to "the public security" or "supreme interests of the country." The vague and overly general terms make it impossible for judges to know what conduct constitutes a criminal offense. President Saied has made his decisions to fire judges immune from any form of immediate appeal and judges can challenge their dismissals only after courts have reached a final judgment in their criminal cases.
*See* Facebook post, Official Facebook page of the Tunisian President's Office, June 1, 2022, at
*https://www.facebook.com/watch/?v=5000246053415829*; "Tunisia : President should reverse decision to dismiss 57 judges," ICJ, June 2, 2022, at *https://www.icj.org/tunisia-president-should-reverse-decision-to-dismiss-57-judges/*; "Tunisia: President's judicial purge branded as 'frontal assault' on rule of law," Middle East Eye, June 10, 2022, at *https://www.middleeasteye.net/news/tunisia-judicial-purge-frontal-assault-rule-law* (accessed December 1, 2022).

[30] On June 1, 2022, President Saied announced the dismissals on 57 judges, whose names were published in the Official Gazette.
*See* "Tunisia: Arbitrary dismissals a blow to judicial independence," Amnesty International, June 10, 2022, at *https://www.amnesty.org/en/latest/news/2022/06/tunisia-arbitrary-dismissals-a-blow-to-judicial-independence/;* "Tunisia: Arbitrary dismissals, a blow to judicial independence," FIDH, June 13, 2022, at
*https://www.fidh.org/en/region/north-africa-middle-east/tunisia/tunisia-arbitrary-dismissals-a-blow-to-judicial-independence.*

[31] "Tunisia's president fires 57 judges," DW, June 2, 2022, at https://www.dw.com/en/tunisias-president-fires-57-judges-accused-of-corruption-critics-outraged/a-62014746; "Tunisian president sacks dozens of judges as he consolidates rule," Al Jazeera, June 2, 2022, at https://www.aljazeera.com/news/2022/6/2/tunisias-president-sacks-dozens-of-judges.

After the dissolution of the CSM and the summary dismissals in February and in June, several civil society groups, the ICJ, the International Bar Association Human Rights Institute ("IBA HRI"), the UN Human Rights Chief, and Diego García-Sayán, the UN Special Rapporteur on Independence of Judges and Lawyers, expressed deep concern about attacks on the independence of the judiciary and the negative impact that these actions have had and will continue to pose to "judicial independence and the right to fair trial and access to justice for all people in Tunisia."[32] UN Human Rights Chief Michelle Bachelet warned that the "dissolution of the High Judicial Council is in clear violation of Tunisia's obligation under international human rights law."[33] The UN Human Rights Committee determined that "executive branch interference in the judiciary — including control over the appointment and careers of judges — violates the right to trial by an 'independent and impartial tribunal' as guaranteed by Article 14 of the International Covenant on Civil and Political Rights ("ICCPR"), which Tunisia has ratified."[34] Therefore, there no longer exists the right to a fair and public hearing by an independent and impartial tribunal, or the right to an effective remedy by the competent national tribunals.

48.     The MOI violated the right of Tunisians to have an impartial tribunal readily available under Article 10 of the UN Human Rights Declaration by preventing judges and staff

---

[32] "Tunisia: Halt plan to dissolve High Judicial Council," ICJ, February 7, 2022, at *https://www.icj.org/tunisia-halt-plan-to-dissolve-high-judicial-council/*; "Tunisia: Presidential decrees undermine judicial independence and access to justice, says UN expert," OHCHR, July 15, 2022, at *https://www.ohchr.org/en/press-releases/2022/07/tunisia-presidential-decrees-undermine-judicial-independence-and-access* (accessed November 29, 2022);
"A/HRC/WG.6/41/TUN/3 - Report of the Office of the United Nations High Commissioner for Human Rights: Summary of Stakeholders' submissions on Tunisia," UN Human Rights Council, July 25, 2022.
[33] "Dissolution of Tunisia's High Judicial Council seriously undermines rule of law in Tunisia – Bachelet," OHCHR, February 8, 2022, at *https://www.ohchr.org/en/press-releases/2022/02/dissolution-tunisias-high-judicial-council-seriously-undermines-rule-law* (accessed December 1, 2022).
*See also* Twitter post, Official Twitter account of UN Human Rights (@UNHumanRights), February 8, 2022, at *https://twitter.com/UNHumanRights/status/1491012727883681795?s=20&t=JiTua5rrxTesoHafYarilA*.
[34] "Tunisia: President's moves to shut down High Judicial Council pose grave threat to human rights," Amnesty International, February 8, 2022, at *https://www.amnesty.org/en/latest/news/2022/02/tunisia-presidents-moves-to-shut-down-high-judicial-council-poses-grave-threat-to-human-rights/*; "Tunisia: Dissolution of Top Judicial Body Threatens Human Rights," Amnesty International, February 25, 2022, at *https://www.amnesty.org/en/documents/mde30/5269/2022/en/*.

from entering their place of business.[35] The UN reported that "Internal Security Forces have cordoned off the Judicial Council's office buildings, preventing judges and staff from entering the premises."[36] By preventing judges and staff from entering CSM's office building, and by interfering with the top body mandated to ensure the independence of the judicial system, the MOI vis-à-vis the Internal Security Forces interfered in government affairs and the judicial process, threatened the security of members and staff of the Council and violated the right to a fair and public hearing by an independent and impartial tribunal, under Article 10 of the UN Human Rights Declaration.[37,38]

*Governance in Tunisia*

49.     On July 25, 2021, President Kais Saied unconstitutionally assumed executive authority, dismissed the country's prime minister, suspended the Assembly of the People's Representatives ("Parliament"), lifted parliamentary immunity, ordered military vehicles to blockade to the entrance of the parliament building, and reportedly sent unidentified plainclothes officers to detain several members of Parliament for acts of "defamation" and other questionable charges.[39]

---

[35] "Tunisia: Dissolution of judicial independence body a 'big step in the wrong direction'," UN, February 8, 2022, at *https://news.un.org/en/story/2022/02/1111502* (accessed December 1, 2022).

[36] *Id.*

[37] Article 10 provides "Everyone is entitled in full equality to a fair and public hearing by an independent and impartial tribunal, in the determination of his rights and obligations and of any criminal charge against him."

[38] "Tunisia: Dissolution of judicial independence body a 'big step in the wrong direction'," UN, February 8, 2022, at *https://news.un.org/en/story/2022/02/1111502* (accessed December 1, 2022).

[39] "Military vehicles surround Tunisian parliament after president says its activities frozen, two witnesses say," Reuters, July 25, 2021, at *https://www.reuters.com/article/tunisia-politics-military-idAFL8N2P10XG*; "Tunisia's president accused of 'coup' after dismissing PM," Al Jazeera, July 25, 2021, at *https://www.aljazeera.com/news/2021/7/25/tunisias-president-dismisses-prime-minister-after-protests*; "Tunisia: Human rights must be upheld following suspension of parliament," Amnesty International, July 26, 2021, at *https://www.amnesty.org/en/latest/news/2021/07/tunisia-human-rights-must-be-upheld-following-suspension-of-parliament-2/*; Vivian Yee, "Tunisia's Democracy Verges on Collapse as President Moves to Take Control," The New York Times, July 26, 2021, at *https://www.nytimes.com/2021/07/26/world/middleeast/tunisia-government-dismissed-protests.html?action=click&module=RelatedLinks&pgtype=Article*; "Tunisia: President's Seizure of Powers Threatens Rights," Human Rights Watch, July 27, 2021, at *https://www.hrw.org/news/2021/07/27/tunisia-presidents-seizure-powers-threatens-rights*; Rached Ghannouchi, "Opinion: My Country Has Been a Dictatorship

July 25, 2021, marked the beginning of a series of unilateral decisions that ultimately: abrogated the constitutional order; violated fair trial guarantees for all; undermined the independence of the judiciary by dissolving the nation's democratically-elected judicial watchdog and summarily sacking 57 judges; violated the rights of Tunisians to participate in the government and the conduct of public affairs, either directly or through their freely chosen representatives, by suspending and later dissolving the parliament; subverted the credibility of elections by seizing control of the independent elections commission; and cracked down on free speech and Saied's opposition by jailing, investigating, placing under house arrest, and imposing travel bans on dissenting voices.[40]

---

Before. We Can't Go Back." The New York Times, July 30, 2021, at *https://www.nytimes.com/2021/07/30/opinion/tunisia-protests-rached-ghannouchi.html*; "Tunisia: President's Repressive Policies Abrogate Rights," Human Rights Watch, September 11, 2021, at *https://www.hrw.org/news/2021/09/11/tunisia-presidents-repressive-policies-abrogate-rights*; "Tunisian parties announce coalition to counter President Saied," Al Jazeera, September 28, 2021, at *https://www.aljazeera.com/news/2021/9/28/four-tunisian-parties-announce-coalition-to-counter-saeed*; "Factbox: How Tunisia's president has tightened his grip," Reuters, July 24, 2022, at *https://www.reuters.com/world/africa/how-tunisias-president-has-tightened-his-grip-2022-07-24/*.

[40] On September 25, 2021, President Saied promulgated Presidential Decree No. 117 which suspended the majority of the Constitution of 2014 and gave the President the power to legislate in all areas and placed presidential decree-laws about the constitution.
*See* "Joint Statement: Tunisia: Unprecedented Confiscation of Power by the Presidency," Human Rights Watch, September 23, 2021, at *https://www.hrw.org/news/2021/09/27/joint-statement-tunisia-unprecedented-confiscation-power-presidency* (accessed December 1, 2022); "Tunisia: President's power grab an alarming slide towards authoritarianism," International Federation for Human Rights (Fédération Internationale des Ligues des Droits de l'Homme, FIDH), September 27, 2021, at *https://www.fidh.org/en/region/north-africa-middle-east/tunisia/tunisia-president-s-power-grab-an-alarming-slide-towards* (accessed December 2, 2022); Amna Guellali, "Tunisia: Carving up the Constitution represents a threat to human rights," Amnesty International, October 5, 2021, at *https://www.amnesty.org/en/latest/news/2021/10/carving-up-the-constitution-represents-a-threat-to-human-rights/*; Eric Goldstein, "Evicted from Their Office, Al Jazeera Works from a Front Yard in Tunisia," Human Rights Watch, November 17, 2021, at *https://www.hrw.org/news/2021/11/17/evicted-their-office-al-jazeera-works-front-yard-tunisia* (accessed December 1, 2022); "Tunisia: Courts Ramp up Speech Prosecutions," Human Rights Watch, December 23, 2021, at *https://www.hrw.org/news/2021/12/23/tunisia-courts-ramp-speech-prosecutions* (accessed December 1, 2022); "Tunisia: President's moves to shut down High Judicial Council pose grave threat to human rights," Amnesty International, February 8, 2022, at *https://www.amnesty.org/en/latest/news/2022/02/tunisia-presidents-moves-to-shut-down-high-judicial-council-poses-grave-threat-to-human-rights/* (accessed December 1, 2022); "Tunisia: Dissolution of Top Judicial Body Threatens Human Rights," Amnesty International, February 25, 2022, at *https://www.amnesty.org/en/documents/mde30/5269/2022/en/*; Sarah Yerkes and Maha Alhomoud, "One Year Later, Tunisia's President Has Reversed Nearly a Decade of Democratic Gains," Carnegie Endowment for International Peace, July 22, 2022, at *https://carnegieendowment.org/2022/07/22/one-year-later-tunisia-s-president-*

50.     Exactly one year after the coup, the minority of the population who chose not to boycott the constitutional referendum voted on a new constitution self-authored by President Saied that codified the president's 2021 authoritarian power grab or coup and enshrined a hyper-presidential autocratic governmental system with "an unaccountable, unimpeachable President, a powerless Parliament and a subordinated judiciary."[41] The adoption of the new constitution followed "a fundamentally flawed, illegal and illegitimate constitution-making process" after a year marked by "the President's cynical, unilateral actions eroding the power of the parliament, dismantling judicial independence, and restricting civic space."[42] Through the consolidation of executive powers and by relegating the future parliament into a legislative body largely subservient to his will, President Saied has granted himself unchecked authority to unilaterally dictate public policy and,

*has-reversed-nearly-decade-of-democratic-gains-pub-87555*; "Tunisia: Urgently reverse alarming backsliding on human rights," Amnesty International, July 21, 2022, at *https://www.amnesty.org/en/latest/news/2022/07/tunisia-urgently-reverse-alarming-backsliding-on-human-rights/*.
*See also* Facebook post, official Facebook page of the Tunisian President's Office, March 30, 2022, at *https://www.facebook.com/watch/?v=398964232068360*.

[41] "Tunisia: New draft constitution undermines independence of Judiciary and weakens human rights safeguards," Amnesty International, July 5, 2022, at *https://www.amnesty.org/en/latest/news/2022/07/tunisia-new-draft-constitution-undermines-independence-of-judiciary-and-weakens-human-rights-safeguards/*; "Tunisia: Proposed constitution codifies authoritarianism," ICJ, July 20, 2022, at *https://www.icj.org/tunisia-proposed-constitution-codifies-authoritarianism/*; "Codifying Autocracy: The Proposed Tunisian Constitution in Light of International Law and Standards," ICJ, July 2022, at *https://icj2.wpenginepowered.com/wp-content/uploads/2022/07/Tunisia-proposed-new-constitution-Legal-briefing-2022-ENG.pdf*; "Tunisia: a rigged referendum delivers Constitution threatening democracy and human rights," ICJ, July 27, 2022, at *https://www.icj.org/tunisia-a-rigged-referendum-delivers-constitution-threatening-democracy-and-human-rights/*.

[42] "Transitional justice is at risk in Tunisia (UN Statement)," ICJ, September 19, 2022, at *https://www.icj.org/transitional-justice-is-at-risk-in-tunisia-un-statement/* (accessed November 30, 2022).
*See also* "Serious threat to freedom of association in Tunisia," FIDH, February 15, 2022, at *https://www.fidh.org/en/region/north-africa-middle-east/tunisia/tunisia-the-draft-amendment-of-the-decree-law-on-associations* (accessed December 2, 2022).
On February 11, 2022, a draft amendment of Decree-Law No. 2011-88 of September 24, 2011, was leaked. The Observatory for the Protection of Human Rights Defenders (the Observatory) believed that the amendment would "considerably restrict the legitimate activities of civil society and of human rights defenders, in violation of the right to freedom of association, a right protected by international human rights instruments to which Tunisia is a party, and especially by article 22 of the International Covenant on Civil and Political Rights, as well as by article 35 of the Tunisian Constitution."

most recently, to rewrite the well-established alliance politics and foreign policy positions of Tunisia.[43]

51.     As outlined by the UN OHCHR in August 2022, and by the International Commission of Jurists ("ICJ") in March 2022, the government of Prime Minister Bouden and headed by President Saied has engaged in a pattern and regular practice of human rights abuses in Tunisia over an extended period of time, including routinely since President Saied's July 25, 2021 power grab or coup, as evidenced by: "the application of laws that sometimes infringed on freedoms and/or led to judgments that severely restricted freedoms"; "the excessive use of pretrial detention"; the increased use and "the improper referral of civilians to military tribunals"; and "the interference by the executive branch in the functioning of the justice system (including the dissolution of the High Council of the Judiciary in February 2022)."[44]

52.     Further, the ongoing absence of the Constitutional Court has undermined human rights protection in Tunisia due to the fact that there is no independent judicial body to rule on or appeal the constitutionality of repressive

---

[43] In August 2022, President Saied sparked a diplomatic row with Morocco and reversed Tunisia's long-standing stance of total neutrality on the Western Sahara issue by personally inviting and then granting the head of the Polisario Front – a movement seeking an independent state in the Western Sahara – a head-of-state reception. On October 18, 2022, the Tunisian Ministry of Foreign Affairs published a statement on its official Facebook page offering the Tunisian government's approval of the decision made by Saudi Arabia and the OPEC + countries to cut oil production.
*See* Facebook post, Official Facebook page of the Tunisian Ministry of Foreign Affairs, Immigration and Tunisians Abroad Office, October 18, 2022, at
*https://www.facebook.com/100064818906255/posts/487505746753385/?sfnsn=mo.*
[44] "ICJ submission to the Universal Periodic Review of Tunisia highlights worrying recent developments," ICJ, April 4, 2022, at *https://www.icj.org/icj-submission-to-the-universal-periodic-review-of-tunisia-highlights-worrying-recent-developments/* (accessed November 30, 2022); "A/HRC/WG.6/41/TUN/2 - Tunisia: Compilation of information prepared by the Office of the United Nations High Commissioner for Human Rights," UN Human Rights Council, August 22, 2022.

laws, thereby violating the rights of the people to have cases challenging the constitutionality of presidential decrees to be heard.[45]After dissolving the elected parliament in March, President Saied issued an April 22, 2022 decree seizing control of one of the last independent institutions in Tunisia: the Independent High Authority for Elections (Instance Supérieure Indépendante pour les Élections, "ISIE").[46] President Saied granted himself the power to change the composition of ISIE – a permanent, independent public authority entrusted with oversight powers to guarantee the conduct of fair and transparent elections and referenda – by replacing the members with seven individuals appointed by himself, an act sure to undermine the credibility of future elections.[47] In its recently published report, the European Commission for Democracy through Law (better known as the "Venice Commission") – the European Union's advisory body on constitutional matters – stated that Saied's decree amending the law on

---

[45] "World Report 2020: Tunisia," Human Rights Watch, 2020, at *https://www.hrw.org/world-report/2020/country-chapters/tunisia*; "World Report 2021: Tunisia," Human Rights Watch, 2021, at *https://www.hrw.org/world-report/2021/country-chapters/tunisia*; Eric Goldstein, "In Tunisia, President's Power Grab and an Absent Constitutional Court," Human Rights Watch, August 27, 2021, at *https://www.hrw.org/news/2021/08/27/tunisia-presidents-power-grab-and-absent-constitutional-court* (accessed December 1, 2022); "World Report 2022: Tunisia," Human Rights Watch, 2022, at *https://www.hrw.org/world-report/2022/country-chapters/tunisia*.
[46] "Tunisian president seizes control of electoral commission," Reuters, April 22, 2022, at *https://www.reuters.com/world/africa/tunisia-pres-appoints-electoral-commission-members-by-decree-latest-power-grab-2022-04-22/* (accessed December 1, 2022).
[47] "Tunisia: No checks and balances on President Saied's one-man rule," ICJ, April 29, 2022, at *https://www.icj.org/tunisia-no-checks-and-balances-on-president-saieds-one-man-rule/* (accessed December 1, 2022); Hanen Jebli, "Tunisian president grants himself power to appoint election authority," Al-Monitor, May 2, 2022, at *https://www.al-monitor.com/originals/2022/04/tunisian-president-grants-himself-power-appoint-election-authority#ixzz7mK5LVvF7* (accessed December 1, 2022); "Presidential Decree 2022-459," DCAF Tunisie, May 9, 2022, at *https://legislation-securite.tn/law/105264*; Tarek Amara, "Tunisian president names new election commission members," Reuters, May 10, 2022, at *https://www.reuters.com/world/africa/tunisian-president-names-new-election-commission-members-2022-05-09/* (accessed December 1, 2022).

the ISIE is unconstitutional, incompatible with international standards, and should therefore be repealed.[48]

53.     On May 25, 2022, President Saied issued an unconstitutional decree to hold an illegal referendum on a new constitution to take place on July 25, 2022. The International Federation for Human Rights (Fédération Internationale des Ligues des Droits de l'Homme, "FIDH") noted that not only does the process of adopting a constitution by referendum breach international electoral standards, but the international requirement for the proper administration of the referendum was violated as the organization responsible for referenda, ISIE, is neither independent nor impartial.[49]

54.     In September 2022, roughly two months after Tunisia's unconstitutional referendum, the African Union's African Court on Human and Peoples' Rights ("African Court")  – one of two bodies charged with protecting human rights in Africa and interpreting the African Charter on Human and Peoples' Rights ("African Charter") – delivered a decision concluding that Tunisia's "drastic measures" (e.g. the suspension of the powers of parliament, limiting immunity of parliamentarians who were freely elected by Tunisian citizens, and seizing power illegally by virtue of a series of presidential decrees that abrogated the constitution of the Republic of Tunisia and the democratic

---

[48] "Tunisia - Urgent Opinion 'On the constitutional and legislative framework on the referendum and elections announcements by the President of the Republic, and in particular on the decree-law n°22 of 21 April 2022 amending and completing the Organic law on the independent High Authority for Elections (ISIE)'," European Commission for democracy through law ("Venice Commission"), May 27, 2022, at *https://www.venice.coe.int/webforms/documents/?pdf=CDL-PI(2022)026-e* (accessed December 1, 2022).

[49] "Tunisia: Constitutional referendum threatens rights won since revolution," FIDH, July 12, 2022, at *https://www.fidh.org/en/region/north-africa-middle-east/tunisia/constitutional-referendum-threatens-rights-won-since-revolution.*

process) violated the African Charter and the laws of the Republic of Tunisia itself.[50],[51] The African Court then ordered the Tunisian government to repeal Presidential Decrees Nos. 69, 80, 109, 117, 137, and 138, as well as to restore constitutional democracy within two years as a measure of restitution.

## VI. CAUSE OF ACTION

### COUNT ONE

55.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

56.     The Torture Victim Protection Act ("TVPA") provides a civil cause of action for the victims of torture and extrajudicial killing against any individual who commits those acts under "the actual or apparent authority, or color of law, of any foreign nation." Torture Victim Protection Act of 1991, 28 U.S.C. § 1350 note.

57.     The TVPA defines extrajudicial killing that is unlawful under international law and not authorized by the judgment of a regularly constituted court.

58.     The TVPA defines torture as acts directed against individuals in the offender's control that inflict severe physical or mental pain and suffering for the purpose of punishment or intimidation of the victim or third parties.

59.     The killing of Decedent Bouziane was not authorized by any court judgment.

60.     The killing of Decedent Bouziane violated international law, including the Third

---

[50] *See* OHCHR, at *https://adsdatabase.ohchr.org/IssueLibrary/AFRICAN%20COURT%20ON%20HUMAN%20RIGHT%20AND%20PEOPLES%27%20RIGHTS.pdf.*

[51] "Latest: Summaries of Judgments Delivered by the African Court on 22 September 2022," African Court on Human and Peoples' Rights ("African Court"), September 22, 2022, at *https://www.african-court.org/wpafc/latest-summaries-of-judgment-delivered-by-the-african-court-on-22-september-2022/;* "Une Décision de la Cour Africaine des droits de l'homme et des peuples" in *Ibrahim Ben Mohamed Ben Ibrahim Belgheith v. Republic of Tunisia,* African Court, September 22, 2022, at *https://www.african-court.org/cpmt/storage/app/uploads/public/632/c75/2a0/632c752a027b6905424329.pdf.*

Geneva Convention.

61.     The killing of Decedent Bouziane was extrajudicial killing as defined by the TVPA.

62.     The severe pain and suffering inflicted upon Decedent Bouziane was torture as defined by the TVPA.

63.     The severe pain and suffering inflicted upon Plaintiff Bhiri was torture as defined by the TVPA.

64.     At all relevant times, Defendant Charfeddine acted under actual or apparent authority, or color of law. He served as the Minister of the Interior from September 2, 2020, to January 5, 2021, and was appointed the Minister of the Interior on October 11, 2021.

65.     At all relevant times, Defendant Yahyaoui acted under actual or apparent authority, or color of law. He was appointed the Director General of the Presidential Security unit on October 30, 2019.

66.     Plaintiffs are unable to obtain an adequate remedy in Tunisia given the dysfunctional judicial system. Any attempt to obtain a remedy there would be futile and create a risk of reprisal given Charfeddine's and Yahyaoui's ongoing activities in Tunisia.

67.     Defendants Charfeddine and Yahyaoui are personally liable for, or exercised command responsibility over, or conspired with, or aided and abetted, the security forces who are responsible for the torture of Plaintiff Bhiri.

68.     Defendant Charfeddine is personally liable for, or exercised command responsibility over, or conspired with, or aided and abetted, the police who are responsible for the death of Decedent Bouziane.

69.     As a result of the extrajudicial killings and torture of their family members and of

themselves, Plaintiffs are entitled to compensatory damages in an amount to be determined at trial.

70.     Defendant Charfeddine's acts were deliberate, willful, intentional, wanton, malicious and oppressive and should be punished by an award of punitive damages.

## VII. JURY TRIAL DEMANDED

71.     Plaintiffs demand a jury trial on all issues.

WHEREFORE, Plaintiffs pray that this court:

1.     Enter Judgment against the Defendants on all counts.

2.     Award compensatory damages in an amount to be proven at trial, but for each plaintiff not less than $10,000,000.00;

3.     Award punitive damages in an amount to be proven at trial, but for each plaintiff not less than $10,000,000.00.

4.     Award reasonable attorneys' fees and costs of suit; and

5.     Award such further relief as this Court deems appropriate, just, and equitable.

Date: December 14, 2022

  /s/Faisal Gill
Faisal Gill
Gill Law Firm
D.C. Bar No. 497312
1717 Pennsylvania Ave Suite 1025
Washington, DC 20006
(310) 418-6675
fgill@glawoffice.com

*Attorney for Plaintiffs*